**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **DANIEL ANDRES DURAN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **NO. EP-19-CV-00335-PRM-MAT** |
| | § | |
| **EL PASO POLICE DEPARTMENT,** | § | |
| **OFFICER VIRGIL MENA,** | § | |
| **OFFICER VICTOR ALMAZA,** | § | |
| | § | |
| **Defendants.** | § | |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the Court is "Defendant Officer Mena's Amended Motion to Dismiss Plaintiff's Complaint and Brief in Support Thereof" ("Amended Motion"), filed by Defendant Officer Virgil Mena ("Mena") on June 18, 2020. (ECF No. 45). The matter was referred to this Court pursuant to 28 U.S.C. § 636(b) and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas for a Report and Recommendation ("R&R") on November 21, 2019, by United States District Judge Philip R. Martinez. (ECF No. 1).

For the reasons set forth below, the Court **RECOMMENDS** that Defendant Virgil Mena's Amended Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**.

## I.      BACKGROUND

A.      FACTUAL BACKGROUND[1]

In considering the motion, "the plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true."

---

[1] While recounting the factual background, the Court addresses only the facts relevant to the immediate Report and Recommendation.

*Oppenheimer v. Prudential Secs. Inc.*, 94 F.3d 189, 194 (5th Cir. 1996).[2] On May 26, 2019, Plaintiff Daniel Andres Duran ("Duran") was leaving a location off Tierra Este Road and Zaragosa Road, at the shopping center next to Valero. (ECF No. 10, at 4; ECF No. 22, at 2). Plaintiff contends he was walking towards his motor vehicle with his business associates when he realized that he forgot his helmet. (ECF No. 10, at 4; ECF No. 22, at 2). He went back for his helmet, and after retrieving it, sprinted back towards his business associates in order to catch up to them. *Id.* Plaintiff states he noticed he was being "approached aggressively from a distance by two individuals that didn't announce themselves at any moment." (ECF No. 10, at 4; ECF No. 22, at 2). The two individuals caught Plaintiff's attention by running towards him and yelling, "hey you [,] stop." (ECF No. 10, at 4; ECF No. 22, at 2). Plaintiff contends he "was unable to make out who [the two individuals] were because there were cars in the way." (ECF No. 10, at 4; ECF No. 22, at 2). Plaintiff claims that in "that moment [he] reacted from fear instinct at a fight or flight moment." (ECF No. 10, at 4; ECF No. 22, at 2). The two individuals were Officer Virgil Mena and Officer Victor Almaza[3] ("Almaza"). (ECF No. 10, at 4; ECF No. 22, at 2).

Plaintiff asserts that the two officers "both started chasing [him] down for no reason." (ECF No. 10, at 4; ECF No. 22, at 2). Plaintiff states that "[he] was tackled to the ground [by Officer Virgil Mena and Officer Almaza,] which ended in a painful breakage of a bone." (ECF No. 8, at 4). Specifically, Plaintiff claims that Defendant Mena "had [him] pinned down in a bear hug off the wall." (ECF No. 10, at 4; ECF No. 22, at 2). Next, Plaintiff states that Defendant Mena "squeezed harder into [Plaintiff's] ribs taking [his] breath away. (ECF No. 10, at 4; ECF No. 22,

---

[2] A *pro se* plaintiff's complaint shall be construed liberally and held to a less stringent standard than those drafted by attorneys. *See Windland v. Quarterman*, 578 F.3d 314, 316 (5th Cir. 2009); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[3] Parties at times have incorrectly named Defendant Almaza as "Almanza." This appears in "Defendant Officer Mena's Amended Motion to Dismiss Plaintiff's Complaint and Brief in Support Thereof" (ECF No. 45) and also in "Defendant Officer Victor Almanza's [sic] Original Answer in Response to Plaintiff's 'Original Complaint'" (ECF No. 31).

at 2). Plaintiff states that Defendant Mena "then dropped [him to the ground] with a [sic] overhead take down manouver [sic]." (ECF No. 22, at 1-2). Plaintiff claims he "was close to blacking out from loss of breath when [Defendant Mena] then kneed [Plaintiff] in the face[,] dropping all his weight [onto Plaintiff] with excessive force." *Id.* at 2. Plaintiff says that "Almaza had already seen [him] taken down by Officer Mena . . . but still felt the need to stomp on [Plaintiff's] right 'fibula' first causing instant breakage . . . ." *Id.* a 1. Plaintiff continues to say that Almaza "still stomp[ed] on [Plaintiff's] other foot on [his] left ankle heavily causing refracture." *Id.* at 2.

While in custody, Plaintiff contends that [he] asked continously [sic] for help on [his] injury for hours." *Id* at 3. In response to his repeated requests, Plaintiff claims that Mena and Almaza "replied they didn't care about [Plaintiff's injury] and where [sic] not worried about [Plaintiff's] health." (ECF No. 10, at 5; ECF No. 22, at 3). Plaintiff claims that "he was not read [his] Miranda rights . . . and [Mena and Almaza] did not once identify themselves as police officers at any time while [Plaintiff] was being approached." (ECF No. 10, at 5; ECF No. 22, at 3).

B.   Procedural Background

On November 21, 2019, Plaintiff filed an initial motion to proceed with this case in forma pauperis. (ECF No. 1). After complying with an order requesting filing of a new affidavit and financial statement, Plaintiff filed a subsequent motion to proceed in forma pauperis on December 13, 2019. (ECF No. 5). Plaintiff's motion was granted on December 19, 2019 (ECF No. 7), and Plaintiff's Complaint was filed into the record. (ECF No. 8). In his Complaint, Plaintiff brings claims against both Mena and Almaza for "excessive use of force," that "they didn't read [Plaintiff his] Miranda rights," and that they did not identify themselves as police officers. (ECF No. 8). Plaintiff seeks compensation for "life long injury and motor vehicle loss asking the court for

2,000,000.00." (ECF No. 1, at 3; ECF No. 5-1, at 4). During a screening of Plaintiff's Complaint, the Court issued a questionnaire to further clarify Plaintiff's claims and allegations. (ECF No. 10).

After supplementing his application and updating his address, Plaintiff filed his answers to the questionnaire. (ECF No. 22). Defendants, Officer Virgil Mena and Officer Victor Almaza, were then served. (ECF Nos. 25 & 28). Defendant Mena filed a Motion to Dismiss on May 21, 2020. (ECF No. 40). On May 29, 2020, the Court ordered Defendant Mena to file a supplemental briefing addressing certain factual allegations and extended Plaintiff's deadline to respond to the Motion to Dismiss until fourteen days after Defendant Mena filed the supplemental briefing. (ECF No. 41). However, on June 18, 2020, Defendant Mena instead filed "Defendant Officer Mena's Amended Motion to Dismiss Plaintiff's Complaint and Brief in Support Thereof" ("Amended Motion"). (ECF No. 45). Although the Amended Motion to Dismiss was filed without leave of Court, because it contained all of Defendant Mena's arguments in support of dismissal which were raised in the Original Motion to Dismiss, the Court found it proper to allow the filing of the Amended Motion. (ECF No. 48).

On July 29, 2020, the Court issued an order requiring Plaintiff to only respond to the Amended Motion (ECF No. 45), while simultaneously stating for the record that no response was required for the Original Motion to Dismiss (ECF No. 40). (ECF No. 48). On August 26, 2020, Plaintiff filed "Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss." (ECF No. 53). On September 2, 2020, Defendant Mena filed a "Reply to Response to Motion." (ECF No. 55). On February 1, 2021, this Court entered a text order mooting Defendant Mena's Original Motion to Dismiss. (ECF No. 40). Accordingly, this matter is now ripe for disposition.

## II.     LEGAL STANDARD

A motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) challenges the sufficiency of a pleading to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering the motion, "the plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Secs. Inc.*, 94 F.3d 189, 194 (5th Cir. 1996). Moreover, a *pro se* plaintiff's complaint shall be construed liberally and held to a less stringent standard than those drafted by attorneys. *See Windland v. Quarterman*, 578 F.3d 314, 316 (5th Cir. 2009); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the court may not look beyond the complaint to determine whether the plaintiff has stated a legally cognizable claim. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

## III.     ANALYSIS

A.     QUALIFIED IMMUNITY[4]

Defendant Mena argues that he "is protected from suit under the doctrine of qualified immunity [for] all actions plead by the Plaintiff . . . ." (ECF No. 45, at 6). Qualified immunity protects "state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at

---

[4] Plaintiff has not specified whether he is suing Defendant Mena in his individual or official capacity. "A claim against an officer in his official capacity is treated as a claim against the municipality." *Jordan v. Brumfield*, 67 F. App'x 408, 415 (5th Cir. 2017). Since Duran does not allege a claim against El Paso County to satisfy municipality liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Court construes Duran's complaint as a claim against Mena *in his individual capacity*. The forthcoming analysis, therefore, will be limited to a consideration of qualified immunity in Mena's individual capacity.

the time of the challenged conduct." *Jackson v. City of Hearne, Texas*, 959 F.3d 194, 200 (5th Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "[L]ower courts have discretion to decide which of the two prongs of [the qualified immunity] analysis to tackle first." *Jackson*, 959 F.3d at 200 (quoting *Ashcroft*, 563 U.S. at 735). Further, "[t]he plaintiff has the burden of establishing a constitutional violation and overcoming a [qualified immunity] defense." *Jackson*, 959 F.3d at 201 (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam)). To meet this burden, "the plaintiff 'must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a [qualified immunity] defense with equal specificity.'" *Jackson*, 959 F.3d at 201 (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Jackson*, 959 F.3d at 200-01 (internal citation omitted) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

Plaintiff alleges that Defendant Mena "used excessive use of force in a malicious way that caused a serious physical injury."[5] (ECF 8, at 4). Defendant Mena asserts that Plaintiff's claim for excessive force is insufficient to overcome a defense of qualified immunity. (ECF 45, at 6). Duran also alleges that "while in custody he asked continously [sic] for help on [his] injury, and then [Mena and Almaza] replied they didn't care about [Plaintiff's injury], and where [sic] not worried about [Plaintiff's] health." (ECF No. 10, at 5). Furthermore, Duran claims that he was "in

---

[5] Plaintiff Duran raises a claim of "excessive use of force" against each police officer on the scene: Defendant Virgil Mena and Defendant Victor Almaza. (ECF No. 8, p. 3). We move forward with the analysis considering all the facts, as they may relate to both Defendants. However, this Court only responds to "Defendant Officer Virgil Mena's Amended Motion to Dismiss Plaintiff's Complaint and Brief in Support Thereof," which is ripe for disposition. (ECF No. 45).

excruciating pain immediately where [he] then asked for medical attention which [Officers Mena and Almaza] denied to [him]." (ECF No. 1-2, p. 8). In his Amended Motion, Defendant Mena argues this claim for denial of adequate medical treatment is insufficient to overcome his qualified immunity. (ECF No. 45, at 10). Finally, Plaintiff claims violation of constitutional rights by alleging Defendant Mena (1) did not read Plaintiff his Miranda Rights, and (2) did not identify himself as a police officer. (ECF No. 45, at 12-13). Defendant maintains that he did not violate the Plaintiff's constitutional rights on either of these counts.

1. Whether Plaintiff has stated a claim for excessive force against Defendant Officer Virgil Mena sufficient to overcome a defense of qualified immunity.

Defendant Mena asserts that Plaintiff's "allegations of excessive force are insufficient to overcome Officer Mena's invocation of the doctrine of qualified immunity" in his individual capacity. (ECF No. 45, at 6). Excessive force claims are analyzed under the reasonableness standard of the Fourth Amendment. *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). In the Fifth Circuit, a Plaintiff asserting an excessive force claim must show: (1) an injury; (2) which resulted directly and only from the use of force that was clearly excessive to the need; and (3) the excessiveness of which was objectively unreasonable. *Collier v. Montgomery*, 569 F.3d 214, 218 (5th Cir. 2009).

a.  Physical Injury

For the first element, the Plaintiff is not required to show a significant injury for Fourth Amendment excessive force analysis, but it is necessary that the Plaintiff suffered some injury that is more than *de minimis*. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir.1999). The amount of injury needed to satisfy the requirement of "some injury" and establish a constitutional violation is related directly to the "amount of force that is constitutionally permissible under the circumstances." *Id.* at 704. "What constitutes an injury in an excessive force claim is therefore

subjective—it is defined entirely by the context in which the injury arises." *Id.* Here, the injury sustained is the injury to his legs: the broken right fibula and refractured left ankle. (ECF No. 22, at 2).

      b.  Physical Injury Which Resulted Directly and Only from the Use of Force that was Clearly Excessive to the Need

For the second element, Plaintiff must establish that his injury "resulted directly and only from the use of force that was clearly excessive to the need an excessive force claim." *Darden v. City of Fort Worth, Texas*, F.3d 722, 728 (5th Cir. 2018).

Plaintiff contends that he was "tackled to the ground[,] which ended up in a painful breakage of a bone." (ECF No. 1, at 3; ECF No. 5-1, at 4). He clarifies that "[when] [Mena and Almaza] tackled [him] to the ground [he felt his] right fibula snap from the bone closer to the ankle." (ECF No. 1-2, at 8). Plaintiff alleges that Defendant Mena "had [Duran] pinned down in a bear hug off the wall. Officer Mena . . . then squeezed harder into [Plaintiff's] ribs taking [his] breath away and throwing [Plaintiff] over head to the ground. [Plaintiff] was practically close too [sic] blacking out from loss of breath when [Mena] then kneed [Plaintiff] in the face dropping all his weight with excessive force." (ECF No. 22, at 2). Plaintiff asserts that Almaza, having already seen Plaintiff taken down by Defendant Mena, still "felt the need to stomp on [his] right 'fibula' first causing instant breakage . . . and still stomp on the other foot on [Plaintiff's] left ankle heavily causing refracture." *Id.* Plaintiff states that "the officers that night . . . used excessive use of force in [a] malicious way that caused a serious physical injury." (ECF No. 1, at 3; ECF No. 5-1, at 4). However, in his Amended Motion, Defendant Mena argues that "at no point in [Plaintiff's] Complaint or in answering the Questionnaire does the Plaintiff allege that Officer Mena had anything to do with the injuries to either of his legs." (ECF No. 45, at 9).

The Court finds that it is unclear based on Plaintiff's allegations over the course of the

pleadings whether the injury to his legs, the broken right fibula and refractured left ankle, were sustained when (1) Plaintiff was thrown overhead and tackled to the ground by Defendant Mena or (2) when Almaza stomped on Plaintiff's legs once he was on the ground. However, these are not two separate encounters or contexts which Plaintiff Duran experiences. This is merely one incident in time, resulting directly in one set of injuries to Plaintiff but inflicted by two actors: Mena and Almaza. Therefore, this Court should assess whether Plaintiff suffered a legally cognizable injury as a direct result of the entire incident in time. *Cf. Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir.1999) (where Plaintiff was choked on two separate occasions by the same Defendant officer, but because the contexts in which the two chokings occurred differed, the Court assessed whether Plaintiff suffered a legally cognizable injury with respect to each individual choking incident). By contextualizing the incident as a whole, the Court determines that Plaintiff's leg injuries resulted directly and only from the officers' conduct on May 26, 2019 (ECF No.10; ECF No. 22): the bear hug, overhead takedown to the ground, kneeing Plaintiff in the face, and stomping on Plaintiff's legs.

      c.   Excessiveness of Force was Objectively Unreasonable

Claims of excessive force involve a fact intensive inquiry. *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012). Under this third element, the Court must consider "whether the officers' actions [we]re 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 396. Among relevant factors to consider are "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Courts assess the reasonableness of the officers' use of force "from the perspective of a reasonable officer on the scene, rather than

with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *Ratliff v. Aransas County, Texas*, 948 F.3d 281, 287-88 (5th Cir. 2020).

Significantly, the Fifth Circuit has held that a police officer uses excessive force when the officer strikes, punches, or violently slams a suspect who is not resisting arrest. *See Newman*, 703 F.3d at 762–63 (finding excessive force where, construing the facts in light most favorable to Plaintiff, he committed no crime, posed no threat to anyone's safety, and did not resist the officers or fail to comply with a command before officers struck him with a baton); *Bush v. Strain,* 513 F.3d 492, 501-02 (5th Cir. 2008) (reasoning that a detective forcefully slamming suspect's face into a vehicle while she was restrained and subdued constitutes excessive force); *see also Griggs v. Brewer*, 841 F.3d 308, 315–16 (5th Cir. 2016) ("punching or otherwise gratuitously harming a restrained suspect constitutes excessive force," although the Court found no excessive force violation because arrestee actively resisted). At this juncture, the Court must also analyze each officer's actions separately. *Darden*, F.3d at 731.[6]

On the night of his arrest, Duran contends that he was "sprinting back towards [his] business associates to catch up them" when he was "approached aggressively from a distance by two individuals that didn't announce themselves at any moment." (ECF No. 22, at 2).  The two unidentified individuals "both caught [his] attention by yelling at [him] 'hey you[,] stop' while running towards [him,] and [he was] unable to make out who they [were] due to cars in the way." *Id.* Plaintiff asserts that "at the moment[, he] reacted from fear instinct at a fight or flight moment." *Id.* Plaintiff contends that "[t]his is when Officer Mena, #2263; and Officer Almaza, #2263 both started chasing [Plaintiff] down for no reason." (ECF No. 22, at 2). In his Amended Motion to Dismiss, Defendant Mena argues that Plaintiff does not provide any facts "alleging what occurred

---

[6] The Court will address only the facts relevant to an assessment of Defendant Mena's conduct in this section.

prior to being tackled and pinned down," without which the Court "cannot determine if the Officers['] actions were unreasonable." (ECF No. 45, at 10).

From the perspective of a reasonable police officer on the scene, a suspect who continues to run after being ordered to stop can be inferred to be attempting to flee from arrest. A suspect attempting to evade arrest by flight is a *Graham* factor that constitutes active resistance, and the Court would have to consider Plaintiff's resistance in its assessment of the objective reasonability of Mena's actions. *Graham*, 490 U.S. at 396. The severity of this context could heighten the permissible degree of force officers may utilize or deem necessary. *Bush v. Strain,* 513 F.3d 492, 502 (5th Cir. 2008) (citing *Graham v. Connor,* 490 U.S. 386, 396 (1989)). As a result, Officer Mena could have thought it necessary to use a heightened degree of force to subdue Plaintiff, who they plausibly inferred to be resisting arrest or attempting to flee.

However, in its analysis of the *Graham* factors, this Court must also consider "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others . . . ." *Graham*, 490 U.S. at 396. Liberally construing Plaintiff's Complaint with all reasonable inferences resolved in the light most favorable to Duran, the Court finds that Plaintiff has pled a plausible claim for relief with respect to Mena's alleged use of excessive force in restraining the Plaintiff. When considering the severity of the crime at issue, Plaintiff contends he "had forgot [his] helmet . . . and [was] sprint[ing] back towards [his] business associates" when he was approached by Defendant Mena. (ECF No. 22, at 2). Plaintiff also contends that Mena "started chasing [him] down for no reason." *Id.* Construing the facts in Plaintiff's favor, there is nothing to suggest that the crime at issue was severe, nor is there indication that Plaintiff posed an immediate threat to the safety of the officers and others just prior to his arrest.

The proper analysis for whether the circumstances of the Plaintiff's actions justified the

reaction by Defendant Mena must be viewed for purposes of assessing the Defendant's instant motion and taking Plaintiff's allegations to be true. Plaintiff also claims that he "was practically close to blacking out from loss of breath when [Defendant Mena] then kneed [Plaintiff] in the face dropping all his weight with excessive force." (ECF No. 22, at 2). Plaintiff does not contend that he was actively resisting when Mena attempted to restrain him in a "bear hug off the wall" or while "throwing [Plaintiff] over head on the ground." *Id.* Taking Plaintiff's account to be true, and in light of the *Graham* standard, Plaintiff's assertion that Defendant Mena restrained him in a "bear hug off the wall," "[threw] him over head on the ground," and "kneed [him] in the face" can together be characterized as an objectively unreasonable use of excessive force in these circumstances. (ECF No. 22, at 2).

With all reasonable inferences resolved in a light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently pled a plausible claim for relief. The Court finds that Mena's alleged use of excessive force in restraining the Plaintiff is sufficient to overcome Officer Mena's invocation of qualified immunity in his individual capacity. Accordingly, this Court recommends that Mena's Amended Motion to Dismiss Duran's claim for excessive force be **DENIED**.

2. Whether Plaintiff has stated a claim sufficient to overcome a defense of qualified immunity for deliberate indifference against Defendant based on denial of adequate medical treatment.

Defendant Mena argues that his own actions "are insufficient to establish that Officer Mena acted with deliberate indifference to the Plaintiff's serious medical needs." (ECF No. 45, at 10). By this reasoning, Defendant Mena asserts that Plaintiff's claim for denial of adequate medical treatment falls short in overcoming Mena's invocation of qualified immunity in his individual capacity. *Id.*

Since Defendant Mena has invoked qualified immunity, Duran "has the burden to

demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). We address each prong in turn.

### a. Whether Defendant Violated a Constitutional Right

Plaintiff Duran asserts that "[Mena and Almaza] tackled [him] to the ground . . . [and he felt his] right fibula snap from the bone closer to the ankle." (ECF No. 1-2, at 8). Plaintiff states he was "in excruciating pain immediately where [he] then asked for medical attention which [Mena and Almaza] denied to [him]." *Id.*

Plaintiff Duran is a pretrial detainee.[7] Pretrial detainees have a constitutional right not to be denied attention to serious medical needs by deliberate indifference under the Due Process Clause of the Fourteenth Amendment. *Peña Arita v. United States*, 470 F.Supp.3d 663, 701 (S.D. Tex. 2020). "Broken bones and bleeding cuts are serious medical needs that require medical attention within hours." *White v. Cooper*, No. 08-CV-1321, 2009 WL 1230008, at *3 (W.D. La. May 5, 2009).

"To prove deliberate indifference, a pretrial detainee must show that the state official [1] knew of and [2] disregarded an excessive risk to the inmate's health or safety." *Id.* (citing *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001)).  This "deliberate indifference" standard requires more than negligence or oversight. *Peña Arita v. United States*, 470 F.Supp.3d 663, 701 (S.D. Tex. 2020). "[T]o defeat qualified immunity, the plaintiffs must establish that the officers . . . were aware of a substantial and significant risk . . . but effectively disregarded it." *Id.* (citing *Jacobs v.*

---

[7] Plaintiff Duran is a pretrial detainee. Pretrial detainees, as distinguished from convicted prisoners, are "those individuals who have been charged with a crime but who have not yet been tried on the charge." *Bell v. Wolfish*, 441 U.S. 520, 523 (1979). The constitutional rights of a pretrial detainee "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996).

*W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 395 (5th Cir. 2000)). A plaintiff "must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 279 (5th Cir. 2015) (citing *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir.2001)). "[T]he plaintiff must show that an officer acted with subjective knowledge of a substantial risk of serious medical harm, followed by a response of deliberate indifference." *Nerren v. Livingston Police Dept.*, 86 F.3d 469, 473 (5th Cir. 1996); *Hill v. Carroll County, Miss.*, F.3d 230, 238 (5th Cir. 2009).

This same subjective deliberate indifference standard has been applied to pretrial detainees under the Fourteenth Amendment, as well as convicted inmates under the Eighth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996); *Nerren v. Livingston Police Dept.*, 86 F.3d 469, 472 (5th Cir. 1996) ("[W]e make explicit that which was heretofore either implicit or taken for granted in our case law: An arrestee's complaint for denial of substantive due process and a pretrial detainee's complaint for denial of substantive due process are evaluated under the same standards.").

"A delay in providing medical care does not rise to the level of a constitutional violation unless the delay results in substantial harm." *Lacy v. Navarro Country Sherriff's Office*, No. 3–08–CV–0450–BD, 2009 WL 1160356, at *1 (N.D. Tex. Apr. 28, 2009) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). "[A]n unexplained delay of hours in treating a serious injury states a prima facie case of deliberate indifference." *Brown v. Hughes,* 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam); see *Estelle v. Gamble*, 429 U.S. 97, 104 & n.11 (1976) (citing *Hughes v. Noble,* 295 F.2d at 495 (5th Cir. 1961) (thirteen hour delay for broken and

14

dislocated cervical vertebrae was sufficient to state a constitutional claim) and *Fitzke v. Shappell,* 468 F.2d 1072 (6th Cir.1972) (where Plaintiff suffered a twelve hour delay)); *Aldridge,* 753 F.2d 970, 972–73 (11th Cir. 1985) (two and a half hour delay in treatment for a bleeding cut under the eye held actionable). But with a serious and painful injury like a broken leg, "it may be that deliberately indifferent delay, no matter how brief, would render defendants liable as if they had inflicted the pain themselves." *Brown v. Hughes,* 894 F.2d 1533, 1538 (11th Cir. 1990) (per curiam).

In sum, "denying or delaying medical treatment is tantamount to 'unnecessary and wanton infliction of pain.'" *Brown v. Hughes,* 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Ignoring an inmate's repeated requests for medical treatment and complaints of excruciating pain also satisfies the deliberate indifference standard. *Easter v. Powell,* 467 F.3d 459, 461-65 (5th Cir. 2006).

Plaintiff Duran alleged that he sustained a serious injury because Defendant Mena and Officer Almaza tackled him to the ground. (ECF No. 8). He specifies "the injury that occurred was [his] right 'fibula' was broken by the ankle area and [his] left 'fibula' had just healed from an accident which [Officers Mena and Almaza] refractured that night." (ECF No. 22, at 1). Since they are broken bones, these injuries constitute serious medical needs requiring treatment within hours. Accordingly, while in custody, Plaintiff "asked for medical attention which [Officers Mena and Almaza] denied to [him]." (ECF No. 1-2, at 8). By denying medical attention to Plaintiff when he had broken bones, the Court finds that Officer Mena's conduct demonstrated deliberate indifference to Duran's serious medical needs.

In his Amended Motion, Defendant Mena argues that "the Plaintiff at no point identified what injury he was complaining of to the Officers." (ECF No. 45, at 11). By this assertion,

Defendant Mena likely suggests that he could not have acted with deliberate indifference because Mena did not know that Plaintiff Duran faced a substantial risk of serious harm, and that Mena needed to take reasonable measures to abate such harm. With all reasonable inferences resolved in a light most favorable to Duran, the Court finds that Mena was on the scene for the duration of the incident and that Defendant contributed to the infliction of Plaintiff's injury at least initially through his conduct. Mena witnessed his colleague stomping on Plaintiff's legs and causing his bones to break. Based on these facts, as alleged by the Plaintiff, Defendant Mena either had knowledge that Plaintiff suffered serious injuries or that Plaintiff faced a substantial risk of serious harm. Taken as true, Plaintiff's injuries should have compelled Defendant Mena to take reasonable measures immediately to ensure Plaintiff received medical attention for his serious injuries.

Plaintiff maintains that medical attention was denied to him by Defendants Mena and Almaza, stating: "[Officers Mena and Almaza] then told me they didn't care [about my injuries] and that I was of no importance to them." (ECF No. 1-2, at 8). However, in his Amended Motion to Dismiss, Defendant Mena argues that "the Plaintiff does not name the officer who made these statements [denying medical treatment] to him." (ECF No. 45, at 11). Because Plaintiff alleges that both officers neglected to provide adequate medical care for his injury, but Plaintiff "doesn't specify what either officer said to him," Defendant Mena argues that the "[C]ourt cannot determine if the Officer's actions unreasonable." (ECF No. 45, at 11-12). Regardless of which officer actively denied Plaintiff medical attention, an unexplained delay of hours in treating a serious injury states a prima facie case of deliberate indifference. *See Lacy v. Navarro Country Sherriff's Office*, No. 3–08–CV–0450–BD, 2009 WL 1160356, at *1 (N.D. Tex. Apr. 28, 2009). For a serious injury like a broken leg, even the briefest of delays in providing medical attention could equate to deliberate indifference. *Brown v. Hughes,* 894 F.2d 1533, 1538 (11th Cir. 1990). Plaintiff states that "it took

roughly 5 hours later to receive medical attention only because someone in higher rank heard me in pain and addressed [Defendant Mena and Officer Almaza] about it." (ECF No. 1-2, at 8). Therefore, the allegation that Defendant Mena's failure to ensure that Plaintiff received immediate medical attention during an unexplained five-hour delay in treating the injury constitutes deliberate indifference. Finally, Plaintiff alleges that "while in custody [he] asked continously [sic] for help on [his] injury for hours, and then [Mena and Almaza] replied they didn't care about it, and where [sic] not worried about [his] health." (ECF No. 22, at 3). By this, the Court can infer that Defendant Mena ignored repeated requests for medical treatment and complaints of pain for hours, which also satisfies the deliberate indifference standard. Resolving the facts in a light most favorable to the Plaintiff, the Court finds that Defendant Mena acted in deliberate indifference to Duran's medical needs, in violation of the Fourteenth Amendment constitutional right.

### b. Whether Defendant Violated Clearly Established Law

For the second prong of the qualified immunity analysis, Plaintiff bears the burden of identifying a particular right that was clearly established by law at the time of Defendant's violation of it. *Peña Arita v. United States*, 470 F.Supp.3d 663, 701 (S.D. Tex. 2020). "[W]e must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc) (internal quotation marks and citation omitted). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "The central concern is whether the official has fair warning that his conduct violates a constitutional right." *Cooper v. Brown,* 844 .3d 517, 524 (5th Cir. 2016)).

As the Court has noted above, it is clearly established that denying medical care to a

prisoner with a serious medical need can constitute a Fourteenth Amendment violation if an officer was "aware of a substantial and significant risk . . . but effectively disregarded it." *Peña Arita v. United States*, 470 F.Supp.3d 663, 701 (S.D. Tex. 2020) (citing *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 395 (5th Cir. 2000)). A delay in providing medical care that results in substantial harm also has the effect of a Fourteenth Amendment violation. *Lacy v. Navarro Country Sherriff's Office*, No. 3–08–CV–0450–BD, 2009 WL 1160356, at *1 (N.D. Tex. Apr. 28, 2009). A plaintiff "must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 279 (5th Cir. 2015)

The Court finds this precedent, comprised of cases previously cited that specifically address (1) deliberate indifference from denied or delayed treatment under the Fourteenth Amendment, but also the Eighth Amendment, which applies the same subjective standard, and (2) that recognize broken bones as serious medical needs, constitutes a combination of precedential authority and robust consensus. Viewing the facts in a light most favorable to the Plaintiff, the Court finds that this precedent provides Defendant Mena fair warning such that he should have known that denial or unjustified delay of medical treatment for a broken bone is unconstitutional.

In sum, resolving all facts in a light most favorable to the Plaintiff, the Court finds that Defendant Mena's conduct would violate the second prong of the qualified immunity analysis that the right was clearly established law. Therefore, Plaintiff has demonstrated that Defendant Mena would not be entitled to qualified immunity for Plaintiff's claim for denial of adequate medical treatment. Accordingly, Court **RECOMMENDS** that Mena's Amended Motion to Dismiss Duran's claim for lack of adequate medical care be **DENIED**.

3. Whether Plaintiff has stated a claim for violation of constitutional rights by alleging Defendant Officer Virgil Mena did not read Plaintiff his Miranda Rights.

Plaintiff contends that Mena and Almaza "did not read him his Miranda rights." (ECF No. 1, at 2; ECF No. 5-1, at 3). Assuming, *arguendo*, that Plaintiff Duran alleges that Defendant Mena and Officer Almaza violated a constitutional right by failing to inform him of his Miranda rights prior to his arrest, this claim is not actionable. The "remedy for a *Miranda* violation is the exclusion from evidence of any compelled self-incrimination, not a section 1983 action." *Rollerson v. City of Freeport, Tex.*, No. H-12-1790, 2013 WL 2189892, at *14 (S.D. Tex. May 16, 2013) (internal citation omitted). "The reading of *Miranda* warnings is a procedural safeguard rather than a right arising out of the fifth amendment." *Rollerson v. City of Freeport, Tex.*, No. H-12-1790, 2013 WL 2189892, at *14 (S.D. Tex. May 16, 2013); *see also Warren v. City of Lincoln Neb.,* 864 F.2d 1436, 1442 (8th Cir.1989) (citing *Miranda v. Arizona,* 384 U.S. 436, 467 (1966)). "Violations of the prophylactic *Miranda* procedures do not amount to violations of the Constitution itself and, as such, fail to raise a cause of action under § 1983." *Foster v. Carroll Cty.*, 502 Fed.Appx. 356, 358 (5th Cir. 2012); *see Rollerson v. City of Freeport, Tex.*, No. H-12-1790, 2013 WL 2189892, at *14 (S.D. Tex. May 16, 2013).

"[A] constitutional violation occurs, and hence, a section 1983 claim exists, only where an individual is compelled to be a witness against himself in a criminal case." *Guillot v. Castro*, No. 17-6117, 2018 WL 3475294, at *3 (E.D. La. July 19, 2018) (citing *Golla v. City of Bossier City*, 687 F. Supp. 2d 645, 661 (W.D. La. 2009)). Here, even if the Defendant Mena and Officer Almaza failed to read Plaintiff Duran his *Miranda* rights, Plaintiff has not been compelled to be a witness against himself. As a result, Duran does not have an actionable claim under § 1983 against Defendant Mena for failure to read his *Miranda* rights. Accordingly, this Court **RECOMMENDS**

that Mena's Amended Motion to Dismiss Duran's claim regarding Defendant Mena's failure to

provide *Miranda* warnings be **GRANTED**.

4.  Whether Plaintiff has stated a claim for violation of constitutional rights by alleging
    Defendants failed to identify themselves as police officers.

Plaintiff also contends that Defendants Mena and Almaza failed to identify themselves as

police officers. (ECF No. 8, at 3; ECF No. 22, at 30). However, in his Amended Motion to Dismiss,

Defendant Mena argues that "the officers were dressed in their full uniform, wearing their badge

and name, when they approached the Plaintiff." (ECF No. 45, at 13). In considering this claim, we

construe the Duran's complaint in a light most favorable to the Plaintiff and take Duran's

allegations as true. *Oppenheimer v. Prudential Secs. Inc.*, 94 F.3d 189, 194 (5th Cir. 1996).

Moreover, we will construe a *pro se* Plaintiff's complaint liberally and hold it to a less stringent

standard than those drafted by attorneys. *See Windland v. Quarterman*, 578 F.3d 314, 316 (5th Cir.

2009); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Construing Plaintiff's allegations in his favor,

the Court finds that Duran's claim argues that it was unreasonable for Mena and Almaza to fail to

identify themselves as police officers before or during the arrest. Again, since Officer Mena has

invoked qualified immunity, Plaintiff Duran "has the burden to demonstrate (1) that the official

violated a statutory or constitutional right, and (2) that the right was clearly established at the time

of the challenged conduct." *Delaughter v. Woodall*, 909 F.3d 130, 137-38 (5th Cir. 2018) (quoting

*Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

The Supreme Court has held that the Fourth Amendment requires police officers to identify

themselves before carrying out an arrest in a private dwelling. *Wilson v. Arkansas,* 514 U.S. 927,

934 (1995); *see Caitlin v. City of Wheaton*, 574 F.3d 361, 369 (7th Cir. 2009). However, this Court

has found no Fifth Circuit case that has recognized a constitutional obligation that police announce

their identity when they carry out an arrest in a public place.[8]

As previously discussed, the second prong of the qualified immunity analysis requires "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized . . . sense: the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[I]n the light of pre-existing law[,] the unlawfulness must be apparent" to the individual violating it. *Id.*

The absence of authority in the Fifth Circuit as to whether police officers must identify themselves when making an arrest in a public place does not meet the standard to be characterized as clearly established law. The matter is not resolved given the absence of any controlling case law. Plaintiff Duran contends that he was "sprinting back towards [his] business associates to catch up them" when he was "approached aggressively from a distance by two individuals that didn't announce themselves at any moment." (ECF No. 22, at 2). Plaintiff continues, alleging that "[the two individuals] both caught [Duran's] attention by yelling at [him] 'hey you stop' while running towards [Duran,] and [Duran was] unable to make out who they [were] due to cars in the way." *Id.* Plaintiff asserts that "at the moment [he] reacted from fear instinct at a fight or flight moment. This is when Officer Mena, #2263; and Officer Almaza [sic], #2263 both started chasing [Duran] down for no reason." (ECF No. 22, at 2). Since the Defendants Mena and Almaza did not identify themselves as police officers, Plaintiff's reaction to two mysterious strangers approaching him "aggressively" may have been justified. *Id.* However, without a clearly established law,

---

[8] The Seventh Circuit has explored this issue. In *Caitlin v. City of Wheaton*, where an arrestee brought a § 1983 action for false arrest and excessive force, the Court held that officers were entitled to qualified immunity despite their failure to identify themselves as police officers during the later stages of arrest. *See Caitlin v. City of Wheaton*, 574 F.3d 361, 369 (7th Cir. 2009).

Defendants Mena and Almaza would not have had fair notice that they had a constitutional obligation to announce their identity prior to completing Plaintiff's arrest. Since the second prong of the qualified immunity analysis fails, Plaintiff has not demonstrated sufficient evidence to overcome Defendant Mena's defense of qualified immunity. Thus, Officers Mena would be entitled to qualified immunity. Accordingly, this Court **RECOMMENDS** that Mena's Amended Motion to Dismiss Duran's claim regarding Defendant Mena's failure to identify himself as a police officer be **GRANTED**.

## IV.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's Amended Motion to Dismiss (ECF No. 45) be **DENIED** to the extent that it seeks dismissal of Duran's claims of excessive force and lack of adequate medical care. The Court **RECOMMENDS** that Defendant's Amended Motion be **GRANTED** to the extent that it seeks dismissal of claims for violation of constitutional rights alleging Mena (1) did not read Plaintiff his Miranda Rights, and (2) did not identify himself as a police officer.

**SIGNED** and **ENTERED** this 11th day of February, 2021.

_____

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE

## NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT WITHIN FOURTEEN DAYS AFTER BEING SERVED WITH A COPY OF THIS**

**REPORT MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**